IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DARRIAN DANIELS, K91046,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 24-cv-1397-DWD |
| | ) |
| **ANTHONY WILLS,** | ) |
| **JOHN/JANE DOE (PROPERTY STAFF),** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Darrian Daniels, an inmate of the Illinois Department of Corrections (IDOC), brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights at Menard Correctional Center (Menard). (Doc. 1). Plaintiff has filed a complaint and a Motion for a Preliminary Injunction (Doc. 2) wherein he alleges that he is being subjected to an ongoing course of retaliation at Menard. He seeks compensation, a return of his hearing aids, and a transfer.

Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

Plaintiff extensively cross-references a case that he currently has pending before Chief District Judge Nancy Rosenstengel—*Daniels v. Wills, et al.*, Case No. 23-cv-2061-NJR. In that case he is proceeding on a single deliberate indifference claim related to the conditions of his confinement in what he described as a condemned suicide watch cell. He had been placed in the cell because of his refusal to take a TB (tuberculosis test). He pursued emergency injunctive relief, and ultimately was administered a TB test on camera during a court hearing. *See, Daniels v. Wills, et al.*, Case No. 23-cv-2061 (Docket entry 93). After the test, Plaintiff was to be released from segregated confinement.

The allegations in the present complaint pick up on what happened after Plaintiff's TB test and his release from the "condemned" cell to the West cell house. Plaintiff alleges that on December 27, 2023, he was moved from the segregation unit to the West house. Shortly after moving to this new housing arrangement, inmate workers approached Plaintiff and threatened him for being a "litigating rat that have lawsuits filed on there warden." (Doc. 1 at 3). Plaintiff reported but otherwise disregarded the threats at which point he alleges that these inmate workers heated fluid in a microwave and passed it to his new cellmate to throw at him. Plaintiff alleges he was severely burned in the incident. Plaintiff alleges the incident took place seven days after he had reported the threat to the Court, and twelve days after he had been ordered released from the segregation unit. (Doc. 1 at 3).

After the first assault, Plaintiff claims that Defendant Wills had much of his personal property taken and had him placed back in the exact cell house where the assault

occurred. He claims that Wills did this despite knowing that his life was at risk in that location. About an hour after returning to the West cell house, Plaintiff's arm was cut by an inmate worker. (Doc. 1 at 4).

Plaintiff alleges that before he reported this second assault to the Court, he was placed in segregation on investigation status. As part of the move to segregation he was told to cuff-up for a shakedown. During the shakedown, a correctional officer told him that he had to hand over his hearing aids both because they did not belong to him and because Wills ordered them to be taken. (Doc. 1 at 4-5). Plaintiff reported the hearing aid issue to the Court, and shortly after he reported it Wills had him taken off investigation status and returned to the West cell house. Believing the West house was dangerous, Plaintiff "walked" himself back to segregation. (Doc. 1 at 5).

Plaintiff alleges that the actions he describes violate his First Amendment rights because the defendants have retaliated against him for filing grievances and lawsuits. (Doc. 1 at 5-6). He alleges that after reporting the initial threats from the inmate workers he was assaulted, and after reporting the assault issues to the Court in his other case, a significant amount of his personal property was taken (including clothing, pictures, and grooming items). Plaintiff alleges that the chronology of events supports a retaliation claim against Defendant Wills, whom he describes as acting brutally and intentionally. He further alleges that because he is hearing impaired, he has a right to aids or assistance for his disability.

Based on the allegations in the Complaint, the Court designates the following counts:

> **Claim 1:** First Amendment retaliation claim against Defendant Wills for repeatedly placing Plaintiff in the West cell house to be threatened and harmed by inmate workers;
>
> **Claim 2:** First Amendment claim against Defendant Wills for confiscating Plaintiff's hearing aids;

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

## Preliminary Dismissal

Plaintiff names the John or Jane Doe property officers, but he does not describe actions by this group of unknown defendants in the body of his complaint with any level of specificity. Section 1983 liability depends entirely on personal responsibility for discrete actions. The shotgun naming of a large or ambiguous group of "Doe" defendants is not sufficient to proceed, because the Court cannot tell who Plaintiff may be referring to by this nomenclature. Additionally, Illinois inmates generally cannot pursue claims in federal court related to the confiscation of personal property because claims about personal property can be resolved via the methods available in Illinois state court. *See, Murdock v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999) (finding that an Illinois prisoner had an adequate post-deprivation remedy in state court for confiscated personal

property). Accordingly, John/Jane Doe property officers are dismissed for failure to state a claim.

## Analysis

"First Amendment retaliation cases require the petitioner to show that the speech or activity was constitutionally protected, a deprivation occurred to deter the protected speech or activity, and the speech or activity was at least a motivating factor in the decision to take retaliatory action." *Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020). The 'motivating factor' amounts to a causal link between the activity and the unlawful retaliation." *Id.* The test of actionable retaliation is usually whether the retaliatory conduct alleged would "deter a person of ordinary firmness" from the exercise of his First Amendment rights. *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). The Court will assume for purposes of analyzing the complaint, that Plaintiff's grievance activity and pending lawsuit are protected activities.

Plaintiff alleges that after he filed grievances and a lawsuit, and after injunctive relief was ordered in his other lawsuit, then Defendant Wills began to retaliate against him by repeatedly placing him in the West cell house where he was twice assaulted by inmate workers. He further alleges that Wills directed his placement in this area for a third time despite knowing of the risks, and that Wills orchestrated the confiscation of his property and hearing aids. Although Plaintiff's allegations of relentless retaliation by a prison warden may seem grandiose, he is a pro se litigant, and the complaint is to be

read broadly in his favor at this early juncture. Plaintiff's retaliation allegations are sufficient at this juncture to proceed when reading the pleading broadly in his favor.

## Motion for a Preliminary Injunction

Plaintiff alleges that in 2012 he was stabbed in the ear by a cellmate, and he now suffers significant hearing loss in the injured ear. (Doc. 2 at 1). He claims that on February 6, 2020, he failed a hearing screening for both ears, and on February 11, 2020, he failed another hearing screening. (Doc. 2 at 1-2). In 2022, he was given hearing aids. Plaintiff alleges that after he initiated his other lawsuit (Case No. 23-cv-2061) in 2023, then Defendant Wills had him assaulted twice by inmate workers, and he had a prison guard confiscate his hearing aids on March 5, 2024. (Doc. 2 at 2). He alleges that without his hearing aids, he cannot hear well enough to participate in hearings or phone calls, and he cannot hear commands from guards. Plaintiff alleges that his hearing trouble poses a risk in the prison environment because if inmates do not follow commands they may be physically harmed. (Doc. 2 at 3-4). Plaintiff seeks removal from Menard, and the return of his hearing aids. (Doc. 2 at 5).

To seek a preliminary injunction, a plaintiff must establish: a likelihood of success on the merits of his claim; no adequate remedy at law; and irreparable harm without the injunctive relief. *See Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). An injunction that seeks an affirmative act by the respondent is a mandatory preliminary injunction and should be sparingly issued. *Mays*, 974 F.3d at 818. If injunctive relief is warranted, the Prison Litigation Reform Act provides that the injunction must be "narrowly drawn,

extend no further than necessary to correct the harm . . . ," and "be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2).  Any injunctive relief granted must also be related to claims proceeding in the underlying lawsuit, and it must generally concern parties associated with those claims.

First, as to Plaintiff's request that he be transferred to another facility, the Court will not currently entertain this form of injunctive relief because it is drastic and is almost never appropriate in the context of injunctive relief within the prison system.  Setting aside the issue of a prison-transfer, the Court is left with Plaintiff's allegation that Wills coordinated the confiscation of his hearing aids out of retaliation for Plaintiff's other litigation.  Plaintiff seeks the return of his hearing aids.  While this is a modest form of injunctive relief that may in some instances be appropriate, the Court will first require Plaintiff to demonstrate that he has made genuine efforts of his own at the prison to seek the return of the hearing aids.  Inmates must use the sick call process, any process for ADA accommodations, and/or the grievance process, before resorting to federal litigation.  Many of the developments in Plaintiff's complaint and Motion for a Preliminary Injunction are very recent in nature, and it is not apparent that he has tried to resolve this particular issue for himself short of resorting to litigation and emergency motion practice.

Accordingly, the Court will **DEFER** any ruling on the Motion for a Preliminary Injunction and will first require Plaintiff to submit proof of his own efforts to resolve this issue at the prison.  Such proof might include sick call request slips, correspondence with the healthcare unit or the ADA coordinator, or grievance forms with responses from the

facility. Once the Court has received responsive information, it will then task the Warden with responding if it appears appropriate.

## Disposition

**IT IS HEREBY ORDERED THAT Claims 1 and 2** of the Complaint (Doc. 1) survive initial screening as described above against Defendant Anthony Wills. By contrast, all claims against John/Jane Does are insufficient, and the Clerk of Court is **DIRECTED** to **TERMINATE** John/Jane Does.

The Clerk of Court is **DIRECTED** to prepare for Defendant Anthony Wills: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), Motion for a Preliminary Injunction (Doc. 2) and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation

of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.**

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* was granted.  See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than 14 days after a transfer or other change of address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute.  Fed. R. Civ. P. 41(b).

Based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

As explained above, a ruling on Plaintiff's Motion for a Preliminary Injunction (Doc. 2) is **DEFERRED** and he is **DIRECTED** to supplement his Motion **within 21 days** with proof of his own efforts to resolve the hearing aid problem at the prison.

IT IS SO ORDERED.

Dated: June 19, 2024

_____
DAVID W. DUGAN
United States District Judge

### Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear.  As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.