## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

DARRIAN DANIELS, K91046,    )
                            )
                Plaintiff,  )
                            )
vs.                         )        Case No. 24-cv-1397-DWD
                            )
ANTHONY WILLS,              )
                            )
                Defendant.  )

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Darrian Daniels brings this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights while at Menard Correctional Center (Menard). Plaintiff alleges that Defendant Wills retaliated against him for prior lawsuits by placing him in dangerous living conditions, and by confiscating his hearing aids. Wills has moved for summary judgment on Plaintiff's alleged failure to exhaust his administrative remedies (Doc. 31), and Plaintiff has responded (Docs. 40, 41, 42). As explained in this Order, there is a material dispute between Wills and Plaintiff about if Plaintiff lodged grievances at Menard about the claims in this case, additionally, this matter may implicate *Perttu v. Richards*. Therefore, Defendant's Motion (Doc. 31) will be denied, and Defendant will be invited to weigh-in on the appropriate course of action concerning the exhaustion defense at this juncture.

BACKGROUND

Plaintiff signed his original complaint on May 23, 2024.  (Doc. 1 at 7)  Upon initial review, the Court allowed two claims to proceed:

Claim 1:    First Amendment retaliation claim against Defendant Wills for repeatedly placing Plaintiff in the West cell house to be threatened and harmed by inmate workers; and

Claim 2:    First Amendment claim against Defendant Wills for confiscating Plaintiff's hearing aids.

(Doc. 7).  Plaintiff's complaint was premised on the assertion that shortly after an evidentiary hearing on injunctive relief in another case, he was moved to the West cell house and was approached by fellow inmates who threatened him for being a "litigating rat that [had] lawsuits filed on [their] warden."  (Doc. 1 at 3).  Plaintiff alleges he reported the threat, but nothing was done, and he was severely burned a few days later when fellow inmates threw hot liquid on him.  He claims that after this assault, Wills knew of the danger to him but returned him to the same cellhouse where he was then cut by an inmate worker.  Finally, he claims that after the second assault, during a shakedown of his property an officer confiscated his hearing aids at Wills' direction.  (Doc. 1 at 4-5).  Plaintiff alleged that all of the events described were forms of retaliation by Wills.  (Doc. 1 at 5-6).  He further alleged Wills ignored or prevented him from filing relevant grievances on these issues.[1]

---

[1] The Court did not designate a retaliation claim on the issue of grievance handling during the §1915A review of the complaint because the allegations in this respect were made in passing and were too speculative to support a freestanding claim.

In the Motion for Summary Judgment (Doc. 31), Defendant Wills argues that although Plaintiff has historically filed grievances all the way to the final level of review at the ARB, his most recent grievance exhausted to the ARB was dated August of 2021. He supported this assertion with an ARB grievance log, and a declaration from an ARB chairperson.  He also supplied an internal grievance log from Menard, which reflected one grievance lodged in January of 2024 that was allegedly returned to Plaintiff in February of 2024, but was never refiled for the second level of grievance officer review. (Doc. 31-2 at 1).  Thus, Wills argues Plaintiff did not properly exhaust any relevant grievances.

Plaintiff counters that he could not file and exhaust grievances because Wills intentionally denied him the grievance process.  He claims he filed grievances on the two assaults, but Wills ignored them, and Wills made sure he was denied access to the grievance box for his hearing aid confiscation issue.  (Doc. 40 at 3-4).  In support of his assertion that he was unable to submit and get responses to grievances about harassment or retaliation, he tendered a grievance he pursued at Western Correctional Center in February of 2025.

FINDINGS OF FACT

The Defendants submitted a grievance log from the Administrative Review Board that reflects a grievance processed at the ARB in August of 2021 concerning Plaintiff's hearing impairment.  (Doc. 31-4 at 1).  They also submitted grievance records from the prison that demonstrate Plaintiff filed just one grievance at the prison in January of 2024, which concerned missing property.  (Doc. 31-2 at 1).  That grievance was returned to

Plaintiff in February of 2024, but was never received by the prison for second level review by a grievance officer. (*Id.*). Finally, ARB chairperson Travis Bayler declared that he reviewed records and did not find any submissions from Plaintiff to the ARB between December of 2023 and May 28, 2024. (Doc. 31-3 at ¶¶12-13, Bayler Decl.).

In response to the summary judgment motion, Plaintiff stated that he attempted to submit emergency grievances after the first and second assaults, but Defendant Wills ignored the grievances. (Doc. 40 at 4). In support of the Complaint, Plaintiff submitted documents that he alleged were summaries of the grievances he submitted after the first and second assault. He claims he submitted the first grievance January 9, 2024 (Doc. 1 at 8), and the second grievance on January 31, 2024 (Doc. 1 at 10). With the complaint, he also included an alleged March 5, 2024, grievance about his hearing aids (Doc. 1 at 11), and a declaration, wherein he alleged that Defendant Wills was intentionally refusing to respond to his properly filed grievances and would not allow him access to the grievance box concerning his hearing aids. (Doc. 1 at 11-13).

## CONCLUSIONS OF LAW

### A. Legal Standards

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving part." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Prison Litigation Reform Act (PLRA) provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available

administrative remedies.  42 U.S.C. § 1997e(a); *Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008).  "The exhaustion requirement is an affirmative defense, which the defendants bear the burden of proving."  *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011).

Historically speaking, courts in the Seventh Circuit have resolved the issue of exhaustion of administrative remedies on paper, or after an evidentiary hearing if there is a genuine dispute of fact.  *See e.g.*, *Smallwood v. Williams*, 59 F.4th 306, 315 (7th Cir. 2023) ("In this circuit, we have determined that disputed factual questions that bear on exhaustion can be resolved by a district court judge (rather than a jury) as a preliminary matter, in what is known as a *Pavey* hearing.").  If there are contested factual issues about exhaustion, a district court holds a hearing, and the judge resolves disputes on facts, including witness credibility.  However, in *Perttu v. Richards*, 145 S.Ct. 1793, 1800 (June 18, 2025), the Supreme Court held that an inmate is entitled "to a jury trial on PLRA exhaustion when that issue is intertwined with the merits of a claim that falls under the Seventh Amendment."  In *Perttu* an inmate alleged that a guard sexually abused him, and that the same guard destroyed his grievances and threatened to kill him if he filed additional grievances.  A claim was allowed to proceed under the First Amendment about the alleged destruction of grievances.  After an evidentiary hearing, a judge concluded that the inmate's witnesses were not credible on the issue of destroyed grievances, and thus the case was dismissed for failure to exhaust.  *Id.* at 1799.

The Sixth Circuit reversed the dismissal for failure to exhaust in *Perttu* on the view that a jury trial was required because the resolution of the exhaustion issue would also implicate a material factual dispute of the substantive First Amendment retaliation claim.

In essence, both the exhaustion issue (plaintiff's ability to file grievances) and the merits of the retaliation claim (about the destruction of grievances) would turn on the same exact facts. The Supreme Court granted certiorari to resolve a circuit split between the line of reasoning used by the Sixth Circuit, and the Seventh Circuit's approach in *Pavey* that leaves all exhaustion disputes to a judge. *Id.* at 1799. Ultimately, *Perttu's* holding is limited to exhaustion issues that are intertwined with and have common factual disputes with the substantive claims, and the Supreme Court did not go so far as to endorse the position that *all* exhaustion issues must be resolved by a jury. *Id.* at 1800. The *Perttu* Court's holding was grounded in statutory interpretation of the PLRA, rather than engaging in a constitutional analysis of the Seventh Amendment.

To properly exhaust remedies in the Illinois Department of Corrections, a prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024. However, "if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting," then the grievance procedure becomes unavailable. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (finding that an inmate who placed a timely ARB appeal in his chuckhole for mailing, but whose grievance was apparently lost, did all that he could to follow exhaustion procedures).

Plaintiff must follow the grievance process outlined in the Illinois Administrative Code. 20 ILL. ADMIN. CODE § 504.800, et seq. (2017). Under IDOC's procedure, an inmate

initiates a grievance with his counselor within 60 days of an event, and he may then

submit his grievance to a grievance officer at his facility, and to the CAO at his facility.

The Grievance Officer shall whenever reasonably feasible, report findings and

recommendations to the CAO within two months after receipt of the grievance. 20 ILL.

ADMIN. CODE 504.830(e). If an inmate is unsatisfied with the outcome at the facility he

must appeal to the ARB within 30 days. 20 ILL. ADMIN. CODE § 504.850(a). An inmate

may also submit a grievance as an emergency to the CAO if there is a substantial risk of

imminent personal injury or other serious irreparable harm. 20 ILL. ADMIN CODE §

504.840(a). The CAO may either deem the grievance an emergency, or the CAO may

deem it a non-emergency and return it to the offender for processing via the normal

channels. *Id.*

### B. Analysis

Here, there is a dispute between the parties about Plaintiff's efforts to exhaust. The

Defendant contends that there is no record of Plaintiff attempting to exhaust his claims,

whereas Plaintiff contends he attempted to tender relevant grievances twice in January

of 2024, and once in March of 2024. Each side has tendered evidence to support their

position. Historically, an issue of this nature would be resolved before the undersigned

at a *Pavey* hearing.

In light of the Supreme Court's holding in *Perttu* last month, the Court finds it

appropriate to first invite briefing on the possibility of intertwinement in this case. The

risk appears low. Plaintiff's case does involve two retaliation claims, but these claims do

not deal directly with the grievance process. By contrast, in *Perttu*, the plaintiff's

operative claim was that a guard retaliated by destroying his grievances. Thus, the factual analysis in *Perttu* about the availability of remedies was the same for the exhaustion issue and the merits of the claim. Here, it appears unlikely that the factual analysis for exhaustion will be identical to the analysis for the two substantive claims. While it is true that the exhaustion issue may tangentially relate to Wills, it is also possible that the grievance process and availability could be discussed entirely separate from Wills. Generally speaking, an inmate deals with prison employees in the cellhouse about access to the grievance process, rather than directly with the Warden. In this way, it is likely the parties could establish a full record to determine exhaustion without implicating the substantive claims against Wills. To ensure that the Court thoroughly reviews the *Perttu* issue, it will begin by denying the Motion for Summary Judgment on Exhaustion and inviting further briefing. The parties are more familiar with the evidence they expect to use on the issue of exhaustion, so they are better positioned to provide insight on the possibility of intertwinement.

Wills shall have 30 days to file a brief concerning *Perttu* intertwinement and the impact on this case, or to move to withdraw the affirmative defense of failure to exhaust altogether. If Wills decides to file a brief on *Perttu*, then Plaintiff shall have 30 days to respond. Once the briefs are received, the Court will either set a *Perttu* intertwinement hearing if more evidence is needed, or it will decide the *Perttu* legal issue on paper and it will then schedule a normal *Pavey* hearing.

## DISPOSITION

Defendant Wills' Motion for Summary Judgment on the issue of exhaustion (Doc. 31) is **DENIED**.  Defendant must file a notice with the Court within 30 days withdrawing this affirmative defense, or he must file a brief on the impact of *Perttu v. Richards* and the exhaustion defense in this specific case.  Plaintiff will have a chance to respond.  If briefs on *Perttu* are filed, the Court will set forth the appropriate next steps.

**IT IS SO ORDERED.**

Dated: July 17, 2025

*s/ David W. Dugan*
DAVID W. DUGAN
United States District Judge